UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNN E. McMAHON,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | Civil No. 3:09-cv-00046 (PCD) |
| UNITED STATES OF AMERICA<br>    Defendant. | :<br>:<br>: | |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment to quiet title and remove the tax liens filed by Defendant on Plaintiff's real property located at 5 Wollman Farms Road in Burlington, Connecticut. In response, Defendant filed a cross motion for summary judgment to declare that the United States has valid and subsisting federal tax liens on Plaintiff's property. For the reasons stated herein, Plaintiff's motion for summary judgment [Doc. No. 25 ] is **DENIED** and Defendant's cross-motion for summary judgment [Doc. No. 28] is **DENIED**.

**I.    Background**

The following facts are undisputed. During 1996, 1999, and 2001-2007, Allen Currier accrued federal tax debt for failure to pay income taxes. Between 2000 and 2008, the Internal Revenue Service made a series of assessments against Currier for these unpaid income taxes. The assessments totaled $334,275.02. (Def.'s 56(a)(1) Stmt ¶ 1). Currier failed to pay the assessments upon notice and demand for payment.

During the relevant time period of 1999 through 2008, Currier resided at 5 Wollmann Farms Road in Burlington, CT ("the Property"). The Property was acquired by Plaintiff Lynne McMahon by warranty deed dated October 21, 1999 for a listed purchase price of $375,000. (Id.

at ¶ 5). Plaintiff is the sole title holder of record of the Property. Plaintiff previously owned real property at 8 Strawberry Hill Road, Bristol, Ct ("the Bristol Property"), of which she acquired sole ownership on or about August 13, 1991. On or about August 25, 1999, Plaintiff obtained a home equity line of credit in the amount of $79,250 secured by a mortgage lien on the Bristol Property. This mortgage lien was paid off after the sale of the Bristol Property on February 29, 2000. Plaintiff used the funds from the home equity loan on the Bristol Property to purchase the Property. (Pl.'s. 56(a)(1) Statement ¶ 9). The remainder of the purchase price was funded through a $300,000 loan from Newtown Saving Bank secured by a mortgage in the Property, which was signed by Plaintiff. On October 21, 1999, Plaintiff and Currier signed a note promising to pay Newtown Savings Bank $300,000 in return for the loan secured by the mortgage on the Property. (Def. 56(a)(1) Statement ¶ 6). This note was modified at later dates but retained the signatures of Plaintiff and Currier.

Currier moved into the Property in October 1999. Plaintiff moved into the Property in February 2000. While residing at the Property, Plaintiff and Currier shared living expenses. From October 1999 through March 2008, Currier made all mortgage payments, which included payments from real estate taxes, for the Property. Currier made the mortgage payments so that he could deduct them from his tax returns. These payments totaled $215,233.49. (Def. 56(a)(1) Statement ¶ 12). Plaintiff has made all mortgage payments on the Property since April 2008.

On March 30, 2007, Defendant, through its agency, the Internal Revenue Service ("IRS"), filed a Notice of Federal Tax Lien ("2007 lien"), which attached to the Property, against "Linda McMahon, Nominee of Allen A. Currier" with the Town Clerk for the Town of Burlington, CT with respect to unpaid federal income taxes of Currier for the 1996, 1999, and 2001-2004 tax

2

years. The notice of federal tax lien listed a total unpaid balance of $179,384.62 for Currier's income tax liabilities during those years. (Pl.'s 56(a)(1) Statement ¶ 11). On November 6, 2008, the IRS filed another Notice of Federal Tax Lien ("2008 lien") against "Lynn McMahon, Nominee of Allen Currier" with respect to Currier's unpaid federal income taxes for the 2005-2007 tax years, which totaled $50,991.36. The 2008 lien also attached to the Property. (Id. at ¶ 21).

Currier filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Connecticut on November 26, 2007. By order dated April 3, 2008, Currier was granted a discharge under 11 U.S.C. § 727. (Def.'s 56(a)(1) Statement ¶¶ 16-17). During the bankruptcy proceedings, the government filed a "Notice of Appearance and Demand for Service of Papers". The government also filed a "Motion to Enlarge Time to Discharge", but this motion was later withdrawn. (Pl.'s 56(a)(1) Statement ¶¶ 16-18).

The parties now file cross-motions for summary judgment. Plaintiff seeks a finding that Currier has no legal or equitable interest in the Property against which the Defendant may secure payment of Currier's tax obligations and that the federal tax liens against the Property are invalid. The government moves for an order declaring that it has valid and subsisting federal tax liens against the Property.

## II.     Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). "There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" Id. (internal citations omitted).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.") If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e).

In determining whether the parties have met their respective burdens, the Court draws "all

4

factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir. 1995). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also Fed R. Civ. P. 56(e). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**III. Discussion**

The government argues that since Currier used funds encumbered by the federal tax liens against him to make over $200,000 in mortgage payments for the Property, the tax liens against Currier now attach to the Property. Plaintiff asserts that the government has no authority to collect the taxes owed by Currier from her, that she is not the nominee of Currier as stated in the liens filed by the IRS against the Property, and that the government is collaterally estopped from arguing otherwise.

**A. Collateral Estoppel**

Collateral estoppel, also known as issue preclusion, bars the relitigation of issues that were actually and necessarily decided as part of a final judgment. Central Hudson Gas and Elec. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). The Second Circuit has determined that four elements must be met for collateral estoppel to apply: (1) the issues at both

5

proceedings must be identical; (2) the relevant issues were actually litigated and decided at the prior proceeding; (3) there must have been full and fair opportunity for litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits. Id. at 368. The party seeking collateral estoppel bears the burden of establishing the necessary elements. Dowling v. U.S., 110 U.S. 342, 350-51 (1990).

Plaintiff asserts that "the issue of the taxpayer's ownership in or rights to the plaintiff's property were before the United States Bankruptcy Court prior to the order of discharge", (Pl.'s Mem. at 21) and seems to contend the government is, therefore, collaterally estopped from maintaining its claim that the federal tax liens against Currier attach to the Property. Plaintiff, however, has failed to establish the necessary elements of collateral estoppel on the issue of the validity of the federal tax lien on the Property. First, there is no indication that the issue of whether the federal tax liens against Currier could attach to the Property was ever raised or litigated in the bankruptcy proceeding. Moreover, as will become evident *infra*, a judgment on the validity of the government's lien on the Property was not necessary to Currier's discharge in bankruptcy.

**B.     Nominee theory**

While the government did not explicitly assert a nominee theory in its summary judgment motion, the Notice of Federal Tax Liens filed against the Property list Plaintiff as the nominee of Currier, and Plaintiff opposes her classification as a nominee in her summary judgment motion. Nominee theory involves the determination of the true beneficial ownership of a property. When employing a nominee theory in a tax lien, the government claims a property is actually owned by the taxpayer even though legal title is in the name of a third party. To establish a valid nominee

6

lien, the government must show that while the third party nominee holds legal title to the property, it is the taxpayer who really owns the property and enjoy its full use and benefit. IRM 5.17.2.5.7.2.

The question of whether property is held by a taxpayer's nominee is determined by state law. Wolfe v. United States, 798 F.2d 1241, 1244 n. 3 (9th Cir.1986); United States v. Snyder, 233 F.Supp.2d 293, 296 (D.Conn.2002); cf. Drye v. United States, 528 U.S. 49, 58 (1999)("[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach"); Aquilino v. United States, 363 U.S. 509, 513 (1960) (same); United States v. Bess, 357 U.S. 51, 55 (1958) (same).  The government presents no case law wherein a Connecticut court has applied the nominee theory, nor is this court aware of any, and this court declines to make the nominee theory Connecticut state law.  However, because it will not affect the results of the decision, this Court will assume, *arguendo*, that federal law applies to the nominee analysis.  In cases where the government has asserted a nominee lien against a third-party, courts have considered some or all of the following factors: 1) whether inadequate or no consideration was paid by the alleged nominee; 2) whether the property was placed in the alleged nominee's name in anticipation of a lawsuit or other liability; 3) whether there is a close relationship between the nominee and the taxpayer; 4) whether the taxpayer and alleged nominee failed to record the conveyance; 5) whether the taxpayer maintains possession of, and exercises dominion and control over, the property; and 6) whether the taxpayer enjoys the benefits of the property. See e.g. LiButti v. United States, 968 F.Supp. 71, 75 (N.D.N.Y. 1997)(applying a six factor test derived from other states' case law); Cody v. United States, 348 F.Supp.2d 682, 694-95 (E.D.Va. 2004).

Even if this court did apply the factor test used by other federal courts, the government has failed to show that Plaintiff holds title to the Property as nominee of Currier. Neither the second factor, whether the property was placed in the alleged nominee's name in anticipation of a lawsuit or other liability, nor the fourth factor, whether the taxpayer and alleged nominee failed to record the conveyance, are satisfied. Plaintiff has always been the sole title holder of record for the Property, and the government has provided no evidence to show that at the time of the purchase in 1999, Currier anticipated a lawsuit or other liability. The Plaintiff also used her own funds to finance the full down-payment on the property. Applying the fifth and sixth factors, while Currier has maintained a residence at the Property, both Plaintiff and Currier have provided uncontested testimony that Plaintiff maintains possession, enjoys the benefits of, and exercises full dominion and control over the Property. Therefore, on balance, the six factor test indicates that Plaintiff is not the nominee of Currier. As to whether the unpaid federal tax liens against Currier can be applied to the Property under a nominee theory, summary judgment for the government is **denied**.

### C. Lien Theory

The government argues that under the Internal Revenue Code, 26 U.S.C. 6321, if a person liable to pay any tax neglects or refuses to pay such tax after demand for payment, the tax liability becomes a lien upon all property and rights to property belonging to such person. A lien under section 6321 arises at the time the assessment is made and continues until the liability is paid in full or becomes unenforceable, for example through the expiration of the statute of limitations on collection. 26 U.S.C § 6322. Accordingly, there are three prerequisites to the existence of a tax lien: 1) the assessment of a tax; 2) the notice of assessment and demand for

payment; and 3) the taxpayer's neglect or refusal to pay. Once these three prerequisites are met, a valid tax lien exists against the taxpayer's property. A tax lien applies not only to all property and rights to property belonging to the taxpayer at the time of the assessment but also to after-acquired property (i.e. any property acquired by the taxpayer during the life of the lien). See Glass City Bank of Jeanette, PA v. U.S., 326 U.S. 265, 267 (1945); United States v. McDermott, 507 U.S. 447, 448 (1993). Once a federal tax lien attaches to property, the transfer of the property does not affect the lien, see Bess, 375 U.S. at 57, and the lien reattaches to any property substituted for the taxpayer's property. See Phelps v. United States, 421 U.S. 330, 334-35 (1975).

In this case, the government established a tax lien against Currier's property and rights to property when each tax assessment was completed, notice and demand for payment was sent, and Currier refused to make payment. Since a tax lien applies not only to the property owned by the taxpayer at the time of the assessment but also to any property acquired during the life of the lien, the government had a lien on his income from the date the first notice of assessment and demand for payment was issued to Currier in May 2000. The IRS alleges that since Currier used income encumbered by the federal tax liens against him to make mortgage payments for the Property between 2000 and 2008, the tax liens against him now attach to the property.

It seems, however, that the government failed to file a notice of federal tax liens against Currier until several years after the liens were established. 26 U.S.C. 6323(f) provides detailed requirements for filing a valid notice of federal tax lien against real and personal property. In the case of personal property, whether tangible or intangible, notice must be filed "in one office within the State . . ., as designated by the laws of such State, in which the property subject to the lien is situated" or with the clerk of the United States district court for the judicial district in

which the property subject to the lien is situated, if the State has not designated such an office. Id. Here, the government has provided no evidence that a notice of federal tax lien was filed until the 2007 lien on the Property was filed against Plaintiff with the Town Clerk of Burlington, Connecticut.

Although filing a public notice is not necessary to validate a federal tax lien, it does have an effect on the priority of the tax lien against other claims on the taxpayer's property. Pursuant to 26 U.S.C. 6323(a), a lien imposed by section 6321 is not "valid as against any purchaser . . . until notice thereof . . . has been filed."[1] A purchaser who is given priority over an unfiled tax lien is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid . . . against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). A person who provides services to a delinquent taxpayer in exchange for payment is classified as a purchaser with priority over a federal tax lien. See Fritschler, Pellino, Schrank & Rosen, S.C. v. United States, 716 F.Supp. 1157, 1160 (E.D. Wis. 1998) (holding a law firm was entitled to priority as a "purchaser" when the taxpayer paid for services rendered in cash).

The government argues that allowing a delinquent taxpayer, such as Currier, to use funds encumbered by a federal tax lien to purchase, or contribute to the payment of, property for a third party which would be free and clear of the federal tax lien would diminish the power of the

---

[1] Section 6323(a) is silent as to the effect actual knowledge of a statutory tax lien has on the priority of a purchaser when notice of the lien has not been filed; however, the IRS has taken the position that "[f]or purposes of I.R.C. § 6323(a), a purchaser...is protected against a statutory tax lien for which a notice of federal tax lien has not been filed notwithstanding actual knowledge of the statutory tax lien." IRS Rev. Rul. 2003-108. For the purposes of section 6323(a), it is, therefore, irrelevant whether Plaintiff was aware of the tax lien against Currier prior to the filing of the lien on the Property in 2007.

federal tax lien and the government's ability to collect unpaid taxes. However, Currier's payments towards the Property's mortgage were not purely gratuitous. During the entire period that he made mortgage payments on the Property owned by Plaintiff, he was also living in the Property. Part, or all, of Currier's mortgage payment were, essentially, rental payments to Plaintiff. By providing Currier with a place to live, Plaintiff became a purchaser of Currier's mortgage payments as that term is defined under 26 U.S.C. § 6323(h)(6). This is not to say that the unfiled tax lien was invalid against Plaintiff for the full amount of the mortgage payments. To qualify as a purchase, there must be adequate and full consideration. It may be that Plaintiff's service of furnished lodging was not adequate and full consideration for the total amount of mortgage payments made by Currier. Any excess Currier paid to Plaintiff in the form of mortgage payments above adequate and full consideration for the services provided would be covered by the tax liens against Currier. Plaintiff would also not be protected as a purchaser under 6323(a) once the Notice of Federal Tax Lien was filed on March 30, 2007. Therefore, to the extent the mortgage payments made by Currier were a gratuitous transfer rather than payment for services rendered or were made after the Notice of Federal Tax Lien was filed, the government has a valid lien against Plaintiff and the Property; however, to the extent the mortgage payments were payment for services rendered, Plaintiff was a purchaser and the unfiled tax lien was ineffective against her.

Additionally, even if the government had properly filed a Notice of a Federal Tax Lien, 26 U.S.C. § 6323(b)(1) protects a purchaser of securities, including negotiable instruments and money, when the purchaser has no actual knowledge or notice of the existence of the lien. A federal tax lien is invalid against the purchaser of a security unless the government can prove

11

actual knowledge or notice to the purchaser of the lien. As of March 30, 2007 when the Notice of Federal Tax Lien was filed against her, Plaintiff claims to have had no knowledge or notice that a tax lien existed against Currier, and the government has not argued otherwise. Therefore, the plaintiff had a superior right pursuant to section 6323(b)(1) for any mortgage payments made prior to March 30, 2007 to the extent Plaintiff was a purchaser of the mortgage payments rather than a transferee.

As a genuine issue of material facts exists as to whether Currier received adequate consideration for the mortgage payments made on the Property, the government's summary judgment motion on a lien theory is **denied**.

### D. Bankruptcy

It is undisputed that the government had a valid federal tax lien against Currier and had filed a lien against the Plaintiff, as nominee of Currier, prior to Currier entering into bankruptcy protection. Plaintiff asserts that because Currier's bankruptcy discharge included all federal taxes, with interest and penalties, from tax years prior to 2004, the government should have removed or modified the lien on Plaintiff's property to reflect the discharge of the pre-2004 tax liability. The government disputes this assertion and cites to In re Isom, 901 F.2d 744 (9th Cir. 1990), for the proposition that a bankruptcy discharge does not destroy a federal tax lien.

A federal tax lien remains in effect until the liability is satisfied or the lien becomes legally unenforceable. 26 U.S.C. §§ 6322, 6325. Plaintiff seems to contend that Currier's bankruptcy discharge makes the liens resulting from his pre-2004 tax liability legally unenforceable. Plaintiff, however, is mistaken as to the extent of the discharge that results from the bankruptcy proceeding. When the government obtains a tax lien, it obtains a right against the

12

encumbered property to secure payment of the tax obligation. This right is in addition to the rights the government has against the taxpayer personally. A bankruptcy discharge only acts as an injunction against the collection of debts as a *personal* liability of the debtor. 11 U.S.C. 524(a)(2). "The debtor's property remains liable for a debt secured by a valid lien, including a tax lien". Isom, 901 F.2d at 745. See also In re Wrenn, 40 F.3d.1162, 1164 (11th Cir. 1994)("Discharge does not affect liability *in rem* and prepetition liens remain enforceable after the discharge."). Since a tax lien is valid against a debtor's property even after discharge, the lien is not "legally unenforceable" under section 6325, and the lien is not released by the taxpayer-debtor's bankruptcy discharge. Currier's discharge, therefore, did not destroy the federal tax liens, and the lien against the Property was not eligible for modification based on the discharge of the pre-2004 tax liability. Summary judgement on Plaintiff's bankruptcy claim is **denied**.

## IV. Conclusion

For the reasons stated herein, Plaintiff's motion for summary judgment [Doc. No. 25] is **DENIED**, and Defendant's cross motion for summary judgment [Doc. No. 28] is **DENIED**.

SO ORDERED.

Dated at New Haven, Connecticut, October  29 , 2010.

/s/
Peter C. Dorsey, U.S.D.J.